**Allen LAWSON, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–14946.**

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1970.

Jay Dalton, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

Allen Lawson, hereinafter referred to as defendant, was charged conjointly with

Richard Lawson and Porter Raymond Campbell for the crime of Robbery by Force. Severance was granted the codefendants and defendant was tried by a jury who found him guilty and from the judgment and sentence assessing his punishment at five years imprisonment in the state penitentiary, he appeals.

Defendant's first contention is that the evidence is insufficient to support the verdict of the jury, and he recites the following facts in his brief:

"This case is the result of a drunken spree had by the defendant, prosecuting witness and several other individuals, on the 4th day of January, 1968. The prosecuting witness, a Mr. Harden, along with the defendant herein and several of his companions, were drinking at a club in Broken Arrow, Oklahoma, called the 51 Club. At this club they were having drinks and they determined that they should go to the Fireside Club, which is located in Creek County close to Sapulpa, Oklahoma. At that time, there were six persons that left the 51 Club to go to the Fireside Club, including the owner of the 51 Club. There was evidence presented at the time of trial, that the party arrived in Sapulpa, at the Fireside Club where they had a few drinks and then ate breakfast at a restaurant in Sapulpa before going back to Broken Arrow, Oklahoma. The State's witness, Mr. Harden, testified that at the time they arrived back at the 51 Club in Broken Arrow, Oklahoma, at approximately 2:00 o'clock A.M., he was accosted and attacked by the defendant herein and robbed of his money. He testified that as he was getting out of the car at the 51 Club, that he turned to face the person who had made the statement, 'what do you think?' He was at that time struck across the face with such violence and force that he fell upon the ground, losing consciousness for a few seconds. As the result of being struck across the face, he was unable to aid himself in any way whatsoever and that he then felt the pockets of his pants and felt that his billfold had been taken from his pants. That he laid on the ground, afraid to get up, afraid to say anything. He felt that it would be useless, he would be outnumbered. As the testimony unfolds at the time of trial, it appears that the party had been drinking heavily on the night in question and that the party was either drunk or very high from drinking an excess amount of liquor.

The defendant took the witness stand in his own defense and stated that there was an altercation on the night in question, but that it was between Mr. Harden and Mr. Porter Raymond Campbell, who was present on the night in question with the party. Mr. Campbell took the witness stand in defendant's behalf and stated that the reason for the altercation between Mr. Harden and himself was the fact that Mr. Harden evidently was a homosexual and had made advances toward Mr. Campbell on the night in question. That as they were getting out of the car in Broken Arrow, at the 51 Club, the prosecuting witness, Mr. Harden, attempted to accost Mr. Campbell and at that time Mr. Campbell struck Mr. Harden with his fist."

To this contention the State, in its Answer, set forth the following:

"Contrary to the defendant's proposition the State did show sufficient evidence to prove robbery by force and fear.

Mr. Larun W. Graham, an eye witness to a portion of the robbery testified as to the defendant's intent as reflected by the testimony on page 107 of the casemade which states:

'A. Well, as we were going in there was a conversation between—

Q. Who was this conversation between?

A. Between the Lawson boys.

Q. Are you referring to Allen Lawson here in the courtroom today?

A. Yes, sir.

Q. All right, sir, and what was that conversation?

A. He said, they were referring to Roy Harden, they said, "That old boy has a lot of money, we ought to roll him."

And I said to them, "Forget it," and that was all I heard about it.'

Mr. Graham's testimony on page 110 of the casemade identifies the defendant and the co-defendant at the scene of the crime with no other persons being present except the victim.

'Q. What happened when you woke up or what, if anything, did you observe or hear?

A. I don't know what woke me up. When I woke up Allen Lawson and Raymond Porter Campbell were on the outside of the car and Roy Harden was on the ground.

Q. What, if anything, did you see them do?

A. I didn't see them do anything.

Q. Were they standing up straight, laying down or what?

A. They were standing up.

Q. Who are you referring to as they?

A. Allen Lawson and Raymond Campbell.'

Although Mr. Graham did not actually see the defendant rob the victim he identified the defendant from the time he was standing over the victim until he got into the car. The victim did not see the defendant and co-defendant but could hear them talking and felt them removing his wallet. Page 74 of the casemade provides:

'Q. Now, what happened after you arrived at the club, did you arrive at the club?

A. Yes, we pulled up at the club. I started to get out on the righthand side, on my side of the car.

Q. Now wait a minute, where was the station wagon stopped at this particular time?

A. It was stopped on the west end of the club.

Q. Are you referring to the 51 Club?

A. The 51 Club.

Q. The west end. All right then, what happened when the vehicle stopped?

A. I got out and as I got out this Campbell boy sitting beside me, he got out be-hind me and at the same time this Lawson boy here got out from the front seat. I turned to go to my truck, and I heard one of them say, "Well, what do you think?"

Q. What happened then?

A. Just as I turned around somebody hit me right in the face with something and knocked me cold.

Q. What happened to you as a result of being struck?

A. Knocked me out.

Q. What transpired then to you yourself?

A. Well, there wasn't long before I regained part of my consciousness.

Q. Did you stand on your feet?

A. No, they knocked me down, clear flat down on the ground.

Q. Can you tell us how you were laying on the ground?

A. Laying face down.

Q. All right, sir, go ahead then, tell us what happened after you were laying on the ground?

A. I regained part of my consciousness. I felt something going through my hip pockets. I started to get up, I thought if I do I will just get more of it, so I just laid there.

Q. What had you felt, someone going in your pockets, where or why?

A. The hands reached in my hip pocket. The billfold was on the inside.

Q. Did you carry anything in your billfold?

A. Yes.

Q. Was this done with your consent?

A. No.

Q. Were you able, at this particular time, to prohibit or stop the person or persons that were doing this from going into your pockets?

A. I wasn't able to. I just barely remember it.

Q. Now, do you know which one of the persons, if any, was there that struck you?

A. I don't know which one of them that did. There was two of them outside the car when I went out.

Q. Was there anyone else out there beside these two?

A. No.

Q. Was there anyone else at the club when you pulled up there and stopped?

A. No.

Q. Was there anyone else standing out there on the ground out there?

A. No.

Q. Do you recall what transpired after you felt someone in your back pockets?

A. As soon as they got my wallet they jumped in the car and took off.'

After the defendant had gotten into the automobile, Mr. Graham heard him make the following statement as recorded at page 113 of the casemade:

'Q. Where did Allen Lawson get?

A. In the back seat.

Q. In the back seat here? (indicating)

A. Yes.

Q. All right, was there any conversation inside this vehicle?

A. The only conversation I heard, I heard the remark made by Allen Lawson, "I thought you said the man had $400.-00." ' "

■ We are of the opinion that there was ample evidence, in light of the testimony set forth by the State, to support the jury's verdict.

■ This leads us to a consideration of the defendant's second assignment of error argued under his single proposition that the court erred in refusing to give an instruction on circumstantial evidence, although such an instruction was not requested. The specific issue here presented was passed on squarely in Smith v. State, Okl.Cr., 368 P.2d 246, wherein this Court, in the body of the opinion at page 250, had this to say:

"We agree with this statement of the trial judge, and his instruction No. 7, together with instructions 5 and 6 fully cover this situation. The court did not give a specific instruction covering circumstantial evidence, but in numerous cases we have held that where circumstantial evidence alone is relied upon for conviction, the court should instruct on the law applicable thereto on his own motion, and that he must so instruct when requested by defendant, but that where the defendant has made no request for instruction on the law of circumstantial evidence, failure of the court to instruct does not constitute reversible error. Davidson v. State, Okl.Cr., 330 P.2d 607, and cases cited."

For the reasons above set forth, the judgment and sentence appealed from is affirmed.

BRETT, P. J., and NIX, J. concur.