**Dennis B. NOTTINGHAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16683.**

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1973.

F. R. Courbois III, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., Frank Muret, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Dennis B. Nottingham, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the offense of Possession of Marijuana; his punishment was fixed at seven (7) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Officer Scott testified that on September 10, 1970 he and other officers went to 1705 N.W. 40th Street in Oklahoma City to execute a search warrant. Upon arriving, they were admitted into the house by two young women, one being the wife of the defendant. The defendant's wife stated that he was at work at American Optical Company. The officers found a clear plastic "baggie" containing marijuana and a hand-rolled marijuana cigarette lying on the table in the dining room. On the buffet, they found a shoe box containing a marijuana substance and a brass smoking pipe. A pill bottle containing marijuana seeds was also found in the same room. In the southeast bedroom,

they found a ten-gallon drum containing approximately two pounds of marijuana and a plastic sack which contained several marijuana plant stems. In the back yard of the residence they pulled up approximately 25 marijuana plants growing in a flower bed.

John McAuliff, a chemist with the Oklahoma State Bureau of Investigation, testified that he received the items identified by Officer Scott. He made a chemical analysis of the items and was of the opinion that they were cannabis sativa, or commonly known as marijuana.

Officer Robertson testified that he assisted the other officers in executing the search warrant. He identified certain photographs he took at the residence and in the back yard.

The State rested and, prior to the introduction of the defendant's evidence, requested permission to reopen its case for additional evidence.

Over the objection of the defendant, Officer Legg testified that he assisted in the search of the residence at 1705 N.W. 40th Street in Oklahoma City. He testified that the defendant was not present at the time of the search.

Detective Don Schimmels testified that he placed the defendant under arrest on the 10th day of September at the American Optical Company where he was working. The defendant was transported to the police station and during the booking process, the defendant gave his address as 1705 N. W. 40th.

For the defense, Margaret Webster, the defendant's mother, testified that he was twenty-four years old, married and had a three-month old child. She further testified that to her knowledge the defendant had not been in any "criminal trouble," and that his general character and reputation was good.

The first proposition asserts that the search of defendant's residence was unlawful in that the purported search warrant used to gain entry to the defendant's premises was invalid and defendant's motion to suppress should have been sustained. The record reflects that the search warrant was issued to the sheriff or any peace officer of Oklahoma County, Oklahoma directing them to search "1705 N.W. 40th, a one story brick and frame dwelling located in the northwest corner of the back yard." The Court has previously held that the town where a search is intended to take place must be set out in the search warrant. Tucker v. State, 45 Okl.Cr. 68, 281 P. 818 (1929), Champion v. State, 50 Okl.Cr. 392, 298 P. 303 (1931), and Ward v. State, Okl.Cr., 293 P.2d 618 (1956).

Although this Court does not condone the sloppy preparation of the search warrant, we are of the opinion that because of the unusual circumstances in the instant case that the omission of the name of the city is not fatal. The Court of Criminal Appeals of Texas, in dealing with a similar proposition in Ex parte Flores, 452 S.W.2d 443 (1970), stated:

"* * * There is nothing in the records before us to show or suggest that premises such as described in the affidavit for issuance of the search warrant may be found in Nueces County other than in the City of Corpus Christi.

"All that is required is that the affidavit or search warrant describe the premises to be searched with sufficient definiteness to enable the officer executing the warrant to locate the property and distinguish it from other places in the community. Rhodes v. State, 134 Tex.Cr.R. 553, 116 S.W.2d 395."

In the instant case, the affidavit for search warrant reflects that the affiant, Officer Legg, received information from an informer, who had given reliable information in the past, that there were approximately twenty-five marijuana plants growing in the back yard at 1705 N.W. 40th. Based upon this information, the affiant walked down the alley behind the state address and could easily observe the marijuana plants, which had been freshly watered, in the back yard. Officer Legg subsequently,

with the assistance of other officers, executed the search warrant. 79 C.J.S. Searches & Seizures, § 81, p. 891, 40.5, states:

> "However, where the error in a description is at worst innocent and technical, and there is additional descriptive language in the warrant, personal knowledge of officer executing the warrant is an element to be considered in determining the sufficiency of the description."

We thus conclude that the description of the premises in the search warrant combined with the knowledge of Officer Legg, who executed the search warrant, was sufficient to enable him to locate the property and distinguish it from other places in the community. We further observe there is nothing in the record before us to show that the premises, as described in the search warrant, may be found in Oklahoma County other than in the City of Oklahoma City. In United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684, the United States Supreme Court stated:

> " * * * If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting."

■ The second proposition contends that the trial court abused its discretion in allowing the State to reopen its case after having once rested and after the defendant demurred to the State's evidence. In Jones v. State, Okl.Cr., 453 P.2d 319, we stated:

> "It is next contended that the trial court erred in allowing the State to reopen the case after the defendant had interposed a Demurrer to the evidence in chief. We have repeatedly held that it is discretionary with the trial court to reopen a case for the purpose of introducing further evidence, and unless a clear abuse of such discretion appears, no question is presented for review on appeal. * * * "

In sustaining the State's motion to reopen, the trial court stated:

> "Well, the Court has not ruled on the demurrer to the evidence and the motion to advise the Jury to acquit the defendant. We did hear argument on it. However, in view of the fact that the witness Legg was not here Monday and the Court denied a continuance and he —it appears that he is here today to testify, the Court will permit the State to reopen its case to offer further evidence and at the conclusion of the additional evidence offered will give the defendant an opportunity to restate his motions to the evidence of the State." (Tr. 56)

Under said circumstances, we are of the opinion that the trial court did not abuse its discretion in allowing the State to reopen its case.

■■ The final proposition asserts that "the evidence is totally insufficient to convict the defendant of possession of marijuana and the defendant's demurrer should have been sustained for that reason." From the foregoing statement of facts, we are of the opinion that the evidence, although circumstantial, was sufficient to sustain a conviction of possession of marijuana. The officers observed a "baggie" of marijuana, a hand-rolled marijuana cigarette and a package of cigarette papers lying on the dining room table. In the same room, they found a shoebox containing a brass smoking pipe and a pill bottle containing marijuana seeds on the buffet. Approximately two pounds of marijuana and a sack containing several marijuana plant stems were found in a drum in a bedroom of the residence. Approximately twenty-five marijuana plants were found

growing in a flower bed in the back yard. There appears little room for doubt that this quantity of marijuana was brought onto the premises and cultivated with the knowledge of the defendant. We further observe that because the State relied upon circumstantial evidence alone, the court should have given a circumstantial instruction on its own motion; however, in absence of a request for said instruction by the defendant, the trial court's failure to so instruct does not constitute reversible error. See Lawson v. State, Okl.Cr., 476 P. 2d 89, and Woods v. State, Okl.Cr., 485 P. 2d 486.

The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting):

I must respectfully dissent to this decision. It is regrettable when an apparently guilty party escapes punishment, because he was convicted on unlawfully obtained evidence; but there is a paramount consideration—the imperative of judicial integrity. "Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." Mapp v. Ohio, 367 U.S. 643, 659, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy." Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928).

In my opinion loose interpretation of this constitutional provision may well be the initial erosion of other long-standing constitutional requirements. If this exception may be allowed, then why not another, and another, until finally the requirements for a search warrant become baseless.

The Fourth Amendment to the Constitution of the United States provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, *and particularly describing the place to be searched,* and the persons or things to be seized." (Emphasis added.)

The Oklahoma Constitution provides that the right of the people to be secure against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, "describing as particularly as may be the place to be searched." Article II, Section 30. This Court has repeatedly held that an affidavit and search warrant merely describing premises by street address, without designating the town in which the premises are located, is constitutionally insufficient to describe the place to be searched. In Tucker v. State, 45 Okl.Cr. 68, 281 P. 818 (1929), this Court held:

"The record discloses that, at the time charged, a constable and a federal prohibition officer procured a search warrant to search a building at 1213 Sheridan Avenue, in said county and state. It is not stated in the search warrant of what town, if any, Sheridan avenue is a part. The warrant in that particular is insufficient, under article 2, § 30, of the Bill of Rights."

In Doyle v. State, 49 Okl.Cr. 422, 295 P. 237 (1931), this Court held:

"This description is wholly insufficient as failing to state the name of the town in which the premises were located. The officers could not tell from this description in what particular town in Pottawatomie county 126 South Minnesota was located. Under this description the officers might have searched that number in one or more of the numerous towns in Pottawatomie County."

"This court has repeatedly held that the description in the affidavit and search warrant must be such that the officers,

without the aid of any other information than that contained in the search warrant, could locate the premises to be searched. White v. State, 43 Okl.Cr. 275, 277 P. 946; Overstreet v. State, 46 Okl.Cr. 68, 283 P. 1032; Smithson v. State, 48 Okl.Cr. 204, 290 P. 568."

I can see no justification for making the requirements for a search warrant any less restrictive than they were in 1929, 1931, or 1956. The Constitution of the United States, and the Constitution of Oklahoma are each specific in its requirements; and until now this Court has consistently enforced this constitutional mandate. I find no compelling reason to emasculate this constitutional command, nor to overrule the decisions of this Court for the past forty years, on this point. It is not an undue burden to require that a search warrant specify the city or town of the premises to be searched. Surely the constitutional right of all persons to be secure against rude invasions of privacy by state officers requires this basic ingredient, if this right is to be more than an empty promise. To eliminate this ingredient of a search warrant is to invite further omissions. I view this decision as being an unnecessary departure from sound judicial precedent which may spawn future unforeseen repercussions.

In the instant case the defendant's written motion to suppress the evidence obtained by the search was summarily overruled without hearing, by a judge of the district court other than the trial judge. Subsequently, as the trial began, the trial judge refused to rule on the defendant's motion to suppress for the reason that another judge of the district court had previously overruled same. The court should have afforded the defendant an opportunity to be heard on his motion. I believe the court erred in overruling the motion to suppress as the warrant and affidavit failed to state the city or town in which the premises to be searched were located.

I again respectfully suggest, with reference to the quotation from Ex parte Flores, supra, quoting from the Texas Court of Criminal Appeals, defendant in this case was never given the opportunity to properly challenge the insufficiency of the search warrant; nor was he given the opportunity to demonstrate to the trial court that there may have been another such address in Oklahoma County. Suppositional information is not the kind of which a court may take judicial notice.

With reference to the citation from United States v. Ventresca, supra, the United States Supreme Court was discussing the requirements for probable cause, not the location to be searched.

I am therefore compelled to dissent to this decision for the foregoing reasons.