Jimmy L. KEENER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–73–202.

Court of Criminal Appeals of Oklahoma.

April 24, 1974.

Charles W. Stubbs, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., John Wilkinson, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jimmy L. Keener, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court, Oklahoma County, Case No. CRM-73-16, for the offense of Operating a Motor Vehicle While Under the Influence of Intoxicating Liquor; he was sentenced to serve ninety (90) days in the county jail and pay a fine of Two Hundred Fifty ($250.00) Dollars. From said judgment and sentence a timely appeal has been perfected to this Court.

A chronological review of the facts reveals that on the evening of December 31, 1972, defendant appeared at a service station located near the westward entrance to Interstate 40 in Shawnee. Mr. Russell Beacher, the attendant on duty at that time, testified that the defendant drove into the station around 7:00 p. m. and asked to buy a tire for his car. Mr. Beacher, upon looking at the automobile driven by defendant, noted that one of the front wheels was missing and the car was resting on its rim. Mr. Beacher told defendant that due to the "chewed-up" condition of the rim he would have to have an entire new wheel. Defendant was somewhat unfriendly and did not believe that he needed a new wheel. After a few minutes, Mr. Beacher saw him leave the station and drive onto Interstate 40, heading west, driving on the rim of the automobile, with sparks flying out behind him as he drove. When asked at trial about defendant's physical condition during the above encounter, Mr. Beacher replied that defendant was intoxicated to the extent that he should not have been driving a car. Mr. Beacher then notified the authorities.

The next to see defendant's car on I-40, was Trooper Wylie Pitts of the Oklahoma Highway Patrol. Trooper Pitts and his partner, had stopped another suspect on the opposite side of the highway and were seated in their patrol car facing east when defendant went past, headed west. Pitts noticed that the car was missing one wheel, was throwing sparks out behind it about 100 yards, and was traveling at an estimated speed of 65 miles per hour. Shortly thereafter, Pitts saw another Highway Patrol unit drive past in pursuit of defendant's automobile. In the other unit was Trooper Charles Edward Blunt. Trooper Blunt had responded to the complaint about defendant and had followed scuff marks on the interstate from Shawnee to the point where he finally stopped defendant, a distance of about 22 miles. He clocked defendant's speed on the vascar device in his patrol unit at 62 miles per hour. It took defendant about a mile to stop the car after the troopers had turned on their red lights. After stopping defend-

ant, Trooper Blunt noted that the front wheel was missing and the car was resting on its A-frame. As defendant got out of the car, the officer noted that his door hit the pavement, that he had great difficulty in getting out of the car, that his breath was heavy with the odor of alcohol, that his speech was slurred and hard to understand, that he had difficulty in walking, and that his eyes were bloodshot and his clothing was wrinkled. He then arrested defendant for Driving While Under the Influence of Intoxicating Liquor. The time was around 8:00 or 8:15 p. m. About that time Trooper Pitts and his partner arrived on the scene. Pitts testified that the vehicle stopped was the same which he had seen earlier, and was in the same condition as described by Trooper Blunt; that defendant had to be assisted in walking from Trooper Blunt's unit to Trooper Pitts' for the ride back to Oklahoma County Jail. On the way, defendant urinated in the front seat of the patrol unit and twice tried to vomit.

Trooper Pitts' testimony was repeated, in substance, by his partner, Trooper Joe Cookson, who was with him during the above events.

At trial, defendant introduced several witnesses in an attempt to prove that he was not intoxicated at the time of his arrest, and that Mr. Beacher was mistaken in identifying him as the person who had stopped at his service station earlier in the evening.

Defendant testified that he had attended a business meeting in Oklahoma City that afternoon, and had then gone to his sister's home in Midwest City, where he remained until around 5:30 in the afternoon. He then proceeded to Shawnee to meet with some of his insurance clients, arriving at around 7:00 p. m. He spent about 45 minutes in an unsuccessful attempt to locate these clients, and then returned to Oklahoma City to attend a family New Year's dinner. It was during his return to Oklahoma City that he was arrested. In response to the State's evidence, he denied

having had anything to drink prior to his arrest and denied having stopped at Mr. Beacher's service station on the way out of Shawnee. He claimed that the reason he was traveling down the Interstate with one wheel missing was that he had had a blowout and had been unable to locate a service station to obtain help. Under cross-examination, he stated that he did not attempt to flag down a passing motorist because he did not believe that anyone would stop to help him on New Year's Eve. He also denied Trooper Pitts' testimony as to his urinating and attempting to vomit in the patrol car after his arrest. He attempted to explain the trooper's testimony as to his physical condition at the time of his arrest through the testimony of his sister, Mrs. Dorinda Ivy, and his wife, Mrs. Brenda Keener. Both testified that Mr. Keener suffered from an eye ailment which caused his eyes to appear bloodshot, and Mrs. Keener testified that defendant walked with a limp due to a knee injury and the fact that one leg was shorter than the other. Mrs. Ivy also corroborated defendant's testimony that he had been at her home in Midwest City earlier in the afternoon, and had not had anything to drink.

On appeal, the defendant raises five assignments of error.

██ First, defendant argues that two questions asked by the prosecutor at trial constituted prejudicial error. We shall discuss each separately. The first question, says defendant, improperly inquired into the alleged commissions of other offenses by the defendant which did not result in conviction. We shall first quote the relevant portion of the transcript:

[Cross-examination by the District Attorney]

"Q: . . . Tell the Court and Jury what you have been arrested for and convicted for?

A. (by defendant): Driving under the influence.

Q. All right. I mean prior to this charge.

Mr. STUBBS (defense counsel): You said—did you understand that question:

Defendant: You mean, anytime been convicted for—

Q. (District Attorney): Yes.

A. I'm sorry.

Q. What have you been arrested for?

A. Reckless driving.

Q. And convicted for?

A. Reckless driving. I'm sorry, I misunderstood you.

Q. You were convicted on a reduced charge of reckless driving?

MR. STUBBS: We object to the form of the question and move for a mistrial, Your Honor, Counsel is improperly asking that question.

THE COURT: Come forward, gentlemen.

(Whereupon, an off the record discussion out of the hearing of the jury was had.)

Q. (District Attorney): When was that conviction, sir?

A. 6-7-72."

Defendant contends that this line of questioning was an improper inquiry into the prior reckless driving conviction because of the prosecutor's reference to it as "a reduced charge of reckless driving." Defendant claims that this question implied to the jury that the prior infraction involved driving while drinking before it was reduced to a charge of reckless driving. He cites the rule that only prior *convictions* may be inquired into for impeachment purposes. (12 O.S.1971, § 381). He claims that here the prosecutor tried to impeach him through the use of the prior *charge* against him before it had been reduced, rather than the prior *conviction* for reckless driving after it had been reduced. We disagree for two reasons. First, the question objected to referred to a convicted *act*, whether or not mention was made of a reduction in charge. Title 12 O.S.1971, § 381, as amended in 1973, states that convic-

tion of a crime may be shown for purposes of affecting a witness's credibility if the crime was a felony or if the crime was a misdemeanor involving moral turpitude. Suffice it to say that the question as asked by the prosecutor clearly inquired into a conviction. Second, we note that the sentence recommended by the jury fell far below the statutory maximum for the offense charged. Because of the aggravated nature of the acts attributed by the defendant in recklessly driving a three-wheeled automobile down an interstate highway at a dangerously high rate of speed, we do not feel that the above question could be said to have improperly prejudiced them against the defendant, especially in view of the comparatively lenient sentence imposed.

■ Defendant also objects to a question posed by the prosecutor wherein he asked defendant if he did not know that it was a violation of the law to drive a vehicle on its rim. Defendant argues that this question was improper impeachment on a collateral matter, i. e., a crime of which defendant had not been convicted. Our review of the transcript shows that the question was asked during a portion of the cross-examination in which the prosecutor was attempting to get defendant's explanation of why he was driving his car down the highway in the manner described above, particularly why defendant did not stop and attempt to flag down another motorist for help. As such, it was analogous to asking defendant if he thought that his conduct had been unsafe or foolhardy. It was hardly collateral to the crime charged, and was well within the bounds of permissible cross-examination. Accordingly, we find no merit to defendant's first assignment of error.

■ In his second assignment of error, defendant contends that the trial court erred in failing to instruct the jury as to the law governing circumstantial evidence. Defendant admits that he made no request for such an instruction, nor did he object to the instructions given. We dismiss defendant's argument for the same reasons

set forth in Lawson v. State, Okl.Cr., 476 P.2d 89 (1970), wherein we stated:

"Where circumstantial evidence alone is relied upon, court should instruct on law applicable thereto on [his] own motion and [he] must so instruct when requested by defendant, but where defendant has made no request for instruction on law of circumstantial evidence, failure of court to instruct does not constitute reversible error."

■■■ Defendant's third proposition of error concerns his objection to several bits of evidence and testimony introduced at trial, which defendant claims were improper impeachment as to collateral matters. First, he objects to the testimony of Mr. Russell Beacher, the Shawnee service station operator, who testified as to the condition of defendant and defendant's car when defendant stopped at his station. In our view, Mr. Beacher's observations that the defendant went from his service station onto the Interstate in a car having only three tires and "enough intoxicated that he shouldn't have been driving a car" were germane to the offense charged and were not at all collateral as argued by defendant. Defendant raises the same objection to the testimony of the three highway patrol troopers that the car was traveling down the highway on three wheels, and to Officers Pitts' and Cookson's account of defendant attempting to vomit in their patrol car following his arrest. In our view, both items of testimony were relevant to the offense charged and are not objectionable as being collateral.

In his fourth assignment of error, defendant alleges violation of 22 O.S.1971, § 1068, the harmless error rule, in the trial court's admission of several items of evidence and argument. Section 1068, which is now numbered 20 O.S.1971, § 3001, states:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejec-

tion of evidence, or as to error in any matter of pleading or procedure, unless it be the opinion of the reviewing court that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

We shall review each bit of evidence objected to in order to determine if there was a substantial violation of defendant's rights. First, defendant objects to the same evidence discussed above in propositions one and three, and we reject his arguments for the reasons cited therein. Second, he claims that the trial court was marred with the asking of numerous leading questions by the prosecutor. Our review of the entire trial transcript in search of such leading questions shows this contention to be without merit. Third, defendant argues that the testimony of Trooper Wylie Pitts was inadmissible as it was based on the official report which was filled out after defendant had been arrested and taken to the Oklahoma County Jail. He argues that Trooper Pitts relied on hearsay received from another trooper contained in the report, thereby making the use of the report to refresh his memory improper. In his brief, defendant states:

"Page 33 of the transcript shows the District Attorney and the Trooper got together with a report, *which was completed by another trooper* in connection with the trooper on the stand and the District Attorney proceeded to allow him to refresh his memory." [emphasis added]

A look at page 33 of the transcript reveals the following:

"Q. (District Attorney): What was the form filled out in relation to his arrest?

A. (Trooper Pitts): It was filled out, *I filled it out,* when we got to Oklahoma County." [emphasis added]

■■■ Our first reaction to defendant's argument must be to point out that he has misread the transcript, in that the trooper testifying was, in fact, the one who had completed the report. Secondly, we feel

that the report was properly used by the witness to refresh his memory as to events which he, himself, had witnessed. The only portion of the report which he obtained from another trooper was the exact speed (62 m. p. h.) at which Trooper Blunt had clocked defendant on vascar. Trooper Pitts did not mention the vascar figure on the stand until asked about it by defense counsel. Instead, he merely gave his own estimate of defendant's speed as "about 65 m. p. h." At no time did he represent the 62 m. p. h. figure as being his own. Pitts' testimony was thus not hearsay and his use of his own report to refresh his memory was entirely proper.

■ A fourth objection raised under this assignment of error is to the following testimony by Trooper Blunt:

"Q. (District Attorney): Trooper, after you got him out of the car and placed him under arrest, what happened then?

A. (Trooper Blunt): I advised him of his rights and then advised him of the other rights about the breathalyzer and blood tests.

(MR. STUBBS): We object to that, that is prejudicial and invades the rights of this man.

(THE COURT): All right. Sustained."

It is defendant's contention that the above exchange was prejudicial in that no sobriety test was ever introduced at trial. Therefore, he argues, the objection which he entered to the Trooper's statement could only have indicated to the jury that a test was given and resulted in a positive showing of driving under the influence. We feel this argument to be without merit for several reasons. First, the defendant's objection was promptly sustained by the trial court. Second, it is obvious from the comparative leniency of the verdict that the jury was not improperly prejudiced against the defendant. Third, defendant himself testified later in the trial that he had never taken either the breathalyzer or the blood test. Therefore, whatever inference implanted in the jurors' minds as to

defendant failing a sobriety test would have been effectively destroyed before the case was submitted to them. We thus hold that there was no error in the admission of this or any of the other evidence raised by defendant in his fourth assignment of error.

■ In his fifth assignment of error, defendant claims that the trial court should have sustained his Motion for New Trial on the ground of newly discovered evidence, exculpatory in nature. The new evidence which he wished to present consisted of the testimony of one of defendant's insurance clients who would have testified that he had seen defendant in Shawnee shortly before his arrest, and that defendant was not at that time intoxicated. Defendant admits that such evidence was merely cumulative in nature, but argues that it was necessary to his case as rebuttal to the testimony of Mr. Russell Beacher. According to defendant, the admission of this evidence could have resulted in a different verdict, but that he could not have obtained it before trial with the exercise of due diligence. In disposing of this proposition of error, we will refer to the test set forth in Taylor v. State, Okl.Cr., 286 P.2d 730 (1955), and cited with approval in Stevenson v. State, Okl.Cr., 497 P.2d 1114 (1972), wherein we stated:

"1. In determining whether a motion for new trial on the ground of newly discovered evidence· should be sustained, the trial court should consider these questions: 1. Is the evidence material? 2. Did the accused or his counsel exercise due diligence to discover the evidence before the trial? 3. Is it cumulative? 4. Is there a reasonable probability that if the newly discovered evidence had been introduced at the trial, it would have changed the result?

2. The granting of a motion for new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court."

While the testimony sought to be introduced in the instant case may have been

material, we find that defendant has not met the other criteria of the above test, and we must, accordingly, reject this assignment of error.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., and BRETT, J., concur.